AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | )    Case No.    '23  MJ3734 |
| One gold iPhone in pink case seized from Patricia Monique Urrea's vehicle on May 21, 2023 and Raw Data Extraction acquired by Chula Vista PD on June 14, 2023 | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, USC sec. 841; 18, USC sec. 2; 18, USC sec. 924 | Possession w Intent to Distribute Methamphetamine, Fentanyl, and Heroin; Aiding and Abetting; Use of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See Attached Affidavit of Veronika Fischer, Special Agent FBI, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Special Agent Veronika Fischer, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: _____10/06/2023_____

Michael S. Berg
_____
*Judge's signature*

City and state:  San Diego, California

Hon. ~~Allison H. Goddard~~, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT**

I, Veronika Fischer, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      This affidavit supports an application for warrants to search the following electronic devices (collectively, "**Target Devices**"[1]) and the Raw Data Extractions[2] derived from the **Target Devices** previously acquired by the Chula Vista Police Department on June 14, 2023:

    a.    One black iPhone in black case (**Target Device 1**) and the Raw Data Extraction derived from **Target Device 1** previously acquired by the Chula Vista Police Department on June 14, 2023, as described in Attachment A-1 and incorporated herein by reference,

    b.    One gold iPhone in pink case (**Target Device 2**) and the Raw Data Extraction derived from **Target Device 2** previously acquired by the Chula Vista Police Department on June 14, 2023, as described in Attachment A-2 and incorporated herein by reference, and

and seize evidence of crimes, specifically Title 21, United States Code, Section 841 (Possession of Methamphetamine With Intent to Distribute, Possession of Fentanyl With Intent to Distribute, Possession of Heroin With Intent to Distribute); Title 18, United States Code, Section 2 (Aiding and Abetting); Title 18, United States Code, Section 922(g), Possession of a Firearm by a Prohibited Person; and Title 18, United States Code, Section 924 (Use of a Firearm During and in Relation To Any Crime of Violence or Drug Trafficking Crime) ("Target Offenses") as described in Attachments B-1 and B-2. This

---

[1] The **Target Devices** were previously searched by CVPD officers pursuant to a State search warrant. Subsequent to those searches, the case was adopted federally. No evidence obtained from that search has been set forth in this Affidavit. Investigators now submit the instant Application and Proposed Warrant to authorize federal agents to search the contents of the **Target Devices**, any previously acquired Raw Data Extractions derived from the **Target Devices**, and seize the evidence set forth in Attachments B-1 and B-2.

[2] The term Raw Data Extraction refers to the content obtained from digital forensic processes utilized to access the data on a mobile device and before that data is sorted, via software tools, into a more user-friendly format. Here, the authorization being sought includes searches of the Raw Data Extractions previously obtained by CVPD officers pursuant to the above-described State search warrants.

1

search relates to the arrests of Patricia Monique URREA and Alexandro Javier VIRGEN on May 21, 2023, in Chula Vista, California, for multiple drug and firearms related charges.[3] A factual explanation supporting probable cause follows. The **Target Devices** and Raw Data Extractions are currently in the custody of the Federal Bureau of Investigation (FBI), 10385 Vista Sorrento Parkway, San Diego, CA 92121.

2. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

3. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since October of 2022. I am currently assigned to the East County Regional Gang Task Force in El Cajon, California. My duties include the investigation and apprehension of individuals involved in violent gang-related activities as well as drug trafficking and distribution. Prior to joining the FBI, I worked as a Forensic Scientist in

---

[3] On August 16, 2023, an indictment was returned charging VIRGEN and URREA for the incident described in this Affidavit. Specifically, VIRGEN was charged with violations of Title 18, United States Code, Section 841(a)(1), Possession of Methamphetamine, Heroin, Cocaine, and Fentanyl with Intent to Distribute; Title 18, United States Code, Section 2, Aiding and Abetting; and Title 18, United States Code, Section 922(g)(1), Possession of a Firearm by a Prohibited Person. URREA was charged with violations of Title 18, United States Code, Section 841(a)(1), Possession of Methamphetamine with Intent to Distribute; and Title 18, United States Code, Section 2, Aiding and Abetting.

Biology/DNA for the Texas Department of Public Safety Crime Laboratory in Austin, Texas.

5.      Prior to being assigned to the FBI San Diego Field Office, I completed the Basic Field Training Course at the FBI Academy in Quantico, Virginia. During New Agent training, which spanned eighteen (18) weeks, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects.

6.      As a result of my training and experience, I know that drug traffickers and gang members communicate using cellular telephones, including utilizing prepaid calling cards, direct connect (radio-to-radio), and texting capabilities. I also know that drug traffickers often change phones to evade detection by law enforcement. Moreover, I know that drug traffickers get phones from third parties and/or oftentimes subscribe to them in fictitious names in order to mask the true identities of the individuals using the phones.

7.      Based upon my training and experience as an FBI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.      Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.      Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.      Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.      Drug traffickers will use cellular/mobile telephones to direct drivers to

synchronize an exact drop off and/or pick up time of their illegal cargo.

e.   Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.   Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g.   Drug traffickers and their co-conspirators often use portable Wi-Fi/hotspot devices. Wi-Fi hotspots are internet access points that allow the Drug traffickers to connect to a Wi-Fi network, which are "pocket-sized" mobile routers that allow the connection to the internet, via Wi-Fi. This allows the traffickers to make phone calls, via Wi-Fi from anywhere, and limit their personal/identifying data to be detected.

h.   The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

8.   Based upon my training and experience as an FBI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.   tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.  On May 21, 2023, at approximately 9:00 p.m., Chula Vista Police Department (CVPD) Officer Alfonso Perdomo observed a black Toyota Corolla, bearing California license plate 8TFF881, fail to stop at a marked stop sign at the intersection of Palomar Street and Frontage Road in Chula Vista, California, which is in the Southern District of California. Failing to stop at a marked stop sign is a violation of California Vehicle Code Section 22450.

10.  Officer Perdomo activated his overhead lights and sirens and conducted a vehicle stop on the Toyota Corolla based on the vehicle's failure to stop at the marked stop sign. Officer Perdomo identified the driver of the Toyota Corolla as Alexandro VIRGEN, the front passenger and registered owner of the vehicle as Patricia URREA, and S.P. as the rear passenger. Officer Perdomo explained why the vehicle was stopped and asked the occupants of the vehicle if there were any illegal narcotics present inside the vehicle. URREA informed Officer Perdomo that there was a glass pipe used for smoking methamphetamine located inside her purse that was placed near her feet. Officer Perdomo

advised the occupants of the vehicle that they were being detained while he conducted a search of URREA's purse. Perdomo asked the occupants of the vehicle if there was anything illegal present inside the vehicle aside from the glass pipe and VIRGEN stated "no." As a result of URREA's previous statement regarding the presence of the glass pipe, Officer Perdomo searched URREA's purse and located a glass pipe with a bulbous end and burn marks. Based on the presence of the glass pipe and the fact that the vehicle was registered to URREA, Officer Perdomo conducted a search of the vehicle.

11.     While conducting a search of the vehicle, Officer Perdomo located a black Nike brand backpack on the back seat of the Toyota Corolla that contained the following items: a black .40 caliber Millennium G2 pistol (#SIW86285) with seven (7) .40 caliber rounds in the magazine next to the pistol, ten (10) plastic baggies containing various amounts of white powder and/or crystalline substances, one (1) plastic baggie containing a dark sticky substance, four (4) blue pills stamped with "M-30", one (1) plastic baggie containing a green leafy substance, approximately 10 (ten) small plastic baggies, approximately 50 larger plastic baggies, a bulbous end glass pipe with residue, and a working digital scale. Based on my training and experience, the presence of these items together typically indicates the sale and distribution of narcotics.

12.     VIRGEN, URREA, and S.P. were separately interviewed. VIRGEN initially denied knowledge of the items in the backpack. VIRGEN subsequently stated that the backpack belonged to S.P.'s boyfriend. VIRGEN later stated that S.P. had bags with her when she got into the vehicle, but VIRGEN stated he did not know if the backpack was one of those bags.

13.     URREA stated that she drove to the Palomar Inn to pick up her brother-in-law, VIRGEN. When URREA arrived, they drank a few beers in the parking lot and saw URREA's friend, S.P., arguing with her boyfriend. S.P. got into the vehicle with URREA and VIRGEN and the group left the Palomar Inn. URREA stated she had no knowledge of the backpack or the items inside of it.

14.    S.P. said she was picked up at the hotel prior to the traffic stop after getting into a fight with her boyfriend. S.P. stated that she had no knowledge of the items inside the backpack.

15.    Target Device 1 was located on Virgen's person and collected as evidence. Target Device 2  was located in the front passenger seat area of the vehicle and collected as evidence. The Target Devices remain in the custody of CVPD.

16.    VIRGEN and URREA were arrested on multiple state charges, including Possession of Controlled Substances for Sale in violation of California Health & Safety Code 11351 and Possession of a Controlled Substance while Armed in violation of California Health and Safety Code 11370.1 (A).

17.    CVPD Agent Anderson tested the seized narcotic evidence upon receipt at the CVPD property room. The gross weight of the narcotic evidence that presumptively tested positive for fentanyl was 111.13 grams, the gross weight of the narcotic evidence that presumptively tested positive for methamphetamine was 23.93 grams, the gross weight of the narcotic evidence that presumptively tested positive for heroin was 21.53 grams, and the gross weight of the narcotic evidence that presumptively tested positive for cocaine was 3.05 grams. As of August 15, 2023, the Drug Enforcement Agency (DEA) Southwest Laboratory confirmed that the total net weight of narcotic evidence containing a detectable amount of fentanyl was 102.001 grams and the total net weight of narcotic evidence confirmed as pure methamphetamine was 22.4 grams.

18.    On June 6, 2023, the Honorable Roderick W. Shelton, Judge of the Superior Court of San Diego, authorized the search of the Target Devices for the date range between May 21, 2022, and May 21, 2023.  On June 14, 2023, the CVPD Digital Evidence Unit (DEU) completed the download of the Target Devices and submitted the Raw Data Extractions into CVPD evidence control.

19.    Based on my training and experience, the amount of fentanyl and methamphetamine located in the black Nike brand backpack inside URREA's registered Toyota Corolla is consistent with that of a distributable quantity and not typically reserved

solely for one's personal use. I am aware from my training, experience, and conversations with other investigators that roughly 0.05 to 0.10 grams of methamphetamine is considered a dosage depending on the unique tolerance of the user and the purity of the methamphetamine. Thus, the 23.93 grams of methamphetamine located in the black Nike brand backpack would be the equivalent of anywhere between roughly 478 and 957 doses depending on the aforementioned factors. I am aware from my training, experience, and conversations with other investigators that roughly 1 milligram of fentanyl is considered a dosage that will keep the user under the influence of the narcotic for 2-4 hours. 111.13 grams of fentanyl, therefore, is approximately 111,130 doses, or enough fentanyl to keep 111,130 individuals under the influence of fentanyl for 2-4 hours. I believe that the value and quantity of the methamphetamine and fentanyl discovered provides probable cause that it was knowingly possessed by VIRGEN and URREA with intent to distribute them. I therefore believe the Target Devices will contain evidence of narcotics trafficking.

20.    Based on my training and experience, I know that individuals who distribute controlled substances often obtain firearms, sometimes via illegal channels, for personal safety and protection. These firearms are often purchased, sold, and traded amongst other gang members and/or distributors of controlled substances. The black .40 caliber Millennium G2 pistol (#SIW86285) was located in the black Nike brand backpack along with the controlled substances.

21.    I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the Target Devices which may identify other persons involved in narcotics trafficking. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of VIRGEN and URREA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail)

addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the Target Devices.

22.    Finally, in my training and experience, drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual distribution event. Coconspirators communicate with one another in efforts to ensure success in getting their valuable cargo to the distributor who will conduct end-user sales. A total of 102.001 grams of fentanyl and 22.4 grams of methamphetamine is a significant quantity and thus necessitates a significant level of coordination and communication in order to sell and/or distribute. Therefore, I respectfully request permission to search the Target Devices for evidence of the Target Offenses from April 21, 2023 to and including May 21, 2023.

## METHODOLOGY

23.    It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices

that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, I will collect the subject cellular/mobile telephones, the associated Raw Data Extractions, and subject them to analysis. All forensic analysis of the data contained within the telephones, its memory cards, and the Raw Data Extractions will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN INFORMATION**

26.     CVPD DEU successfully extracted raw data from the **Target Devices** as detailed in Paragraph 18 above.

27.     On or about September 8, 2023, the Honorable Karen S. Crawford, U.S. Magistrate Judge for the Southern District of California, authorized the search of the **Target Devices.** However, the Search Warrant was not executed within the allotted time as investigators were awaiting information from CVPD DEU regarding their searches of the **Target Devices**.

//

//

//

//

//

10

## CONCLUSION

28.    Based on all the facts and circumstances described above, there is probable cause to conclude that VIRGEN and URREA used the Target Devices to facilitate violations of the Target Offenses.

29.    Because the Target Devices were promptly seized during the investigation of VIRGEN and URREA's state narcotics distribution arrests and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by VIRGEN and URREA continues to exist on the Target Devices. As stated above, I believe that evidence of the Target Offenses will cover the period from April 21, 2023, to and including May 21, 2023.

WHEREFORE, I request that the court issue warrants authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

_____

Veronika Fischer
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of October 2023.

Michael S. Berg

_____

The Honorable Allison H. Goddard
United States Magistrate Judge

11

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The following property is to be searched:

One gold iPhone in pink case (**Target Device 2**) and the Raw Data Extraction derived from **Target Device 2** previously acquired by the Chula Vista Police Department on June 14, 2023.



**Target Device 2** was seized from Patricia Monique URREA's vehicle on May 21, 2023. It is currently in the custody of the Federal Bureau of Investigation (FBI), 10385 Vista Sorrento Parkway, San Diego, CA 92121. A Raw Data Extraction was acquired from **Target Device 2** by CVPD on June 14, 2023. A copy of that Raw Data Extraction is currently in the custody of CVPD, 315 Fourth Avenue, Chula Vista, CA 91910.

**ATTACHMENT B-2**

ITEMS TO BE SEIZED

Authorization to search **Target Device 2** the Raw Data Extraction derived from **Target Device 1** previously acquired by the Chula Vista Police Department on June 14, 2023 described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile devices for evidence described below. The seizure and search of the cellular/mobile devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile device and Raw Data Extraction will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 21, 2023 to and including May 21, 2023:

a.  tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to **Target Device 2**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 18, United States Code, Section 2; Title 21, United States Code, Section 841; and Title 18, United States Code, Section 924.**